IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA

v.

KARLA PAOLA GOMEZ-PEREIRA,

Defendant.

Case No. 25-1173 (M)

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Analiz Suarez-Velez, being first duly sworn, do here by depose and state that:

**BACKGROUND**

1. I am a Special Agent employed by the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI") and have been employed as a Special Agent since September 2024. I am an investigative or law enforcement officer of the United States who is empowered to conduct investigations of or to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. As a Special Agent, my responsibilities include conducting investigations of the alleged manufacture, distribution and possession of controlled substances, importation of controlled substances, smuggling of goods into the United States, firearm's violations, and other related offenses. I am presently assigned to HSI, San Juan, Airport Investigations and Tactical Team ("AirTAT"). The AirTAT is a multi-agency task force based out of the Luis Muñoz Marin International Airport ("SJU") that investigates international drug trafficking and money laundering organizations that utilize the aviation domain to smuggle narcotics and currency into and through the United States

1

2.      Prior to my tenure as a Criminal Investigator, I completed a degree in Social Science with a minor in Labor Relations from the University of Puerto Rico, Rio Piedras Campus. Additionally, I worked as a Legal Administrative Specialist with the Department of Veterans Affairs for 8 months. During my tenure as a Criminal Investigator, I have completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia and completed the Homeland Security Investigation's Special Agent Training at the Federal Law Enforcement Training Center. During Homeland Security Investigation's Special Agent Training, I received extensive training conducting investigations related to firearms violations and narcotics smuggling, which includes interdiction and distribution activities where investigations commonly conducted are related to violations of Titles 8, 18, 19, 21 and 31 of the United States Code.

3.      This affidavit is submitted in support of a criminal complaint charging KARLA PAOLA GOMEZ-PEREIRA ("GOMEZ-PEREIRA") with: (1) Possession with Intent to Distribute of Five Kilograms of more of Cocaine in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(ii) and Title 18, United States Code, Section 2.

4.      Because this Affidavit is submitted for a limited purpose, I have not included details of every aspect of this investigation. I am thoroughly familiar with the information contained in this Affidavit, either through personal investigation or discussions with other law enforcement officers who have interviewed individuals or personally have obtained information, which they in turn have reported to me.

2

**PROBABLE CAUSE**

5. On December 22, 2025, at approximately 4:50 p.m., AirTAT Task Force Officers ("TFOs") were conducting Domestic Flight Operations at SJU. Puerto Rico Police Bureau ("PRPB") K9 Officer Alfonso Bachiller (Badge # 26705) and K9 Nico #4 were assisting HSI TFOs.

6. At approximately 6:00 p.m., HSI TFOs observed a female, later identified as GOMEZ-PEREIRA, entering through JetBlue Terminal door of SJU.

7. While GOMEZ-PEREIRA was entering SJU, HSI TFOs observed that GOMEZ-PEREIRA suitcase had a United States Department of Agriculture ("USDA") sticker already on the top handle of the suitcase. The pre-placement of the USDA sticker onto suitcases is consistent with drug trafficking organizations modus operandi when attempting to smuggle narcotics through SJU.

8. GOMEZ-PEREIRA was scheduled to travel in United flight number UA 2036 with a destination of Newark Liberty International Airport, Newark, New Jersey. GOMEZ-PEREIRA was carrying one handbag, one backpack, one black check-in type suitcase and a light green check -in type suitcase.

9. HSI TFOs located GOMEZ-PEREIRA suitcase in the loading ramp area and coordinated with a K9 to conduct an open air odor test on the black check-in type suitcase and light green check-in type suitcase. At approximately 6:20 p.m., K9 Nico alerted positive to the presence of controlled substances inside the black check-in type suitcase and the light green check-in type suitcase, bearing a United tag reflecting the destination of EWR—Newark, Newark.  The United tag also reflected the name of "GOMEZPEREIRA."

3

10.     HSI TFOs then secured both the black check-in type suitcase and the light green check-in type suitcase, and escorted it to the SJU United terminal, gate B8 where GOMEZ-PEREIRA was located.

11.     HSI TFOs approached GOMEZ-PEREIRA at United terminal, gate B8 and asked GOMEZ-PEREIRA if the black check-in type suitcase and light green check-in type suitcase was hers.  GOMEZ-PEREIRA replied yes. HSI TFOs then asked GOMEZ-PEREIRA to provide them with the United boarding pass to corroborate the name on the suitcase tag to match the name on the boarding pass.  GOMEZ-PEREIRA handed the HSI TFO's her boarding pass. HSI TFOs compared GOMEZ-PEREIRA's boarding pass to the suitcase tag and confirmed that they matched.

12.     HSI personnel then asked GOMEZ-PEREIRA for consent to the opening of her suitcases which she verbally consented. Upon verbally providing consent to open the suitcase, HSI personnel asked GOMEZ-PEREIRA to open the suitcase herself.

13.     GOMEZ-PEREIRA opened the black check-in type suitcase followed by opening the light green check-in suitcase. HSI investigators observed a brick shaped object wrapped in carbon paper on both suitcases. Based on training and experience, the brick shaped object was consistent with the packaging of kilogram quantities of controlled substances often referred to as "Kilos".

14.     HSI investigators then escorted GOMEZ-PEREIRA, the suitcases and belongings to the AirTAT facilities located at SJU.

15.     At approximately 7:03 p.m., GOMEZ-PEREIRA signed a written consent for the search of her suitcases, bags, and electronic device.   GOMEZ-PEREIRA also provided the passcode for her electronic device.

4

16. At approximately 10:22 p.m., HSI investigators advised GOMEZ- of her *Miranda* Rights in her native Spanish language, and at approximately 10:23 p.m. on, GOMEZ-PEREIRA knowingly and voluntarily waived her *Miranda* right by signing ICE Form 73-025 and agreed to speak with HSI investigators in an interview that was video and audio recorded. GOMEZ-PEREIRA stated in sum and in part:

    a. That she understands that she was either transporting money or "trabajo."[1]

    b. That she did not receive a confirmation number for the trip.

    c. That this trip would've been the first time traveling.

17. HSI investigators then proceeded to conduct a search of the bags revealing an iPhone cellphone with a clear case and other personal items. Subsequently, HSI investigators conducted a search of the black check-in type suitcase and light green check-in type suitcase. Upon opening the black check-in type suitcase and light green check-in type suitcase, HSI investigators observed several pieces of bed sheets. Further inspection revealed several brick shaped objects wrapped in carbon paper, concealed inside bed sheets. I believe based on my training and experience, the brick shaped object was consistent with the packaging of kilograms of cocaine. Below is a photograph of the light green check-in type suitcase:

---

[1] Based on the knowledge and experience, Drug Trafficking Organizations (DTO) utilize the word "trabajo" when referring to kilograms of cocaine. GOMEZ-PEREIRA specifically utilized the word "KILOS" to refer to narcotics being transported. Based on training an experience members of Drug Trafficking Organizations (DTO) utilize the dword "KILOS" when referring to kilograms/bricks of cocaine.



18.     HSI investigators conducted a chemical identification analysis on the brick shaped objects which revealed the brick shaped objects to contain cocaine hydrochloride. HSI investigators weighed the seized bricks of cocaine—which weighed approximately 13.07 kilograms. Below is a photograph of the cocaine on a scale:



19.     My preliminary review of the consent search of GOMEZ-PEREIRA's phone revealed the following:

a. That GOMEZ-PEREIRA received a confirmation email from flight UA 2036.

b. That GOMEZ-PEREIRA stated, via audio messages sent, that she had made several trips and knew how this type of trips is made.

**CONCLUSION**

20. Based upon my training, experience, and facts concerning this investigation, I respectfully believe that there is probable cause to believe that KARLA PAOLA GOMEZ-PEREIRA committed the following offense: (1) Possession with Intent to Distribute of Five Kilograms of more of Cocaine in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(ii) and Title 18, United States Code, Section 2.

Respectfully submitted,

ANALIZ SUAREZ VELEZ
Digitally signed by ANALIZ SUAREZ VELEZ
Date: 2025.12.23 11:52:02 -04'00'

Analiz Suarez-Velez
Special Agent
Homeland Security Investigations
San Juan, Puerto Rico

Sworn in accordance with the requirement of Fed. R. Crim. P. 4.1. by telephone at 1:33 PM on this 23rd day of December 2025, in San Juan, Puerto Rico.

HON. MARCOS E. LOPEZ
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF PUERTO RICO